IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TYRUS SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| DIRECTOR OF IDOC, JOHN R. BALDWIN; CHIEF OF HEALTH SERVICES, DR. STEVE MEEKS; DR. RAJNEESH SALWAN; WEXFORD HEALTH SOURCES, INC.; UNNAMED CORRECTIONAL OFFICERS AT STATEVILLE CORRECTIONAL CENTER; UNNAMED HEALTHCARE PROFESSIONALS AT STATEVILLE CORRECTIONAL CENTER, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

**COMPLAINT**

NOW COMES Plaintiff, TYRUS SCOTT ("Scott"), by and through his attorneys, and alleges the following against Defendants JOHN R. BALDWIN ("Baldwin"), DR. STEVE MEEKS ("Dr. Meeks"), DR. RAJNEESH SALWAN ("Dr. Salwan"), WEXFORD HEALTH SOURCES, INC. ("Wexford"), UNNAMED CORRECTIONAL OFFICERS at Stateville Correctional Center ("Stateville"), and UNNAMED HEALTHCARE PROFESSIONALS at Stateville.

**JURISDICTION AND VENUE**

1. This action arises under § 1983 of the Civil Rights Act of 1871 ("§ 1983"), the Americans with Disabilities Act of 1990, as amended, codified at 42 U.S.C. 12101, et seq. ("ADA"), and § 504 of the Rehabilitation Act, as amended, codified at 29 U.S.C. §§ 794–94e ("§ 504"), to remedy violations of Scott's constitutional and statutory rights.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343, and 42 U.S.C. § 1983.

3. Venue is proper under 28 U.S.C. § 1391(b), because the events giving rise to the claims asserted herein all occurred within the Northern District of Illinois, namely in Joliet, Illinois.

4. Plaintiff has exhausted administrative remedies reasonably available to him prior to bringing his 42 U.S.C. § 1983 civil rights claims, his ADA claim, and his § 504 claim in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a).

## PARTIES

Plaintiff

5. Plaintiff, Tyrus Scott, is currently incarcerated in the Illinois Department of Corrections ("IDOC"), at Stateville Correctional Center ("Stateville") and has suffered or is at risk of suffering serious harm as a result of Defendants' deliberate indifference to his serious medical needs, and is being discriminated against for his disability, paraplegia.

Defendants

6. Defendant Baldwin is the Director of IDOC and is sued in his official capacity. As Director of IDOC, Baldwin is responsible for overseeing the operations, management, policies, and practices of the Illinois state prison system, which includes constitutionally adequate medical care for all prisoners in the custody of IDOC. In all his actions described in this complaint, Baldwin is acting under color of state law and in the course of his employment.

7. Defendant Meeks is the Chief of Health Services for IDOC and is sued in his official capacity. As Chief of Health Services, Dr. Meeks is responsible for ensuring that IDOC healthcare policies, directives, and protocols are properly implemented at all facilities; for ensuring that healthcare staff, including vendor staff, are appropriately qualified; for assisting with contract

monitoring; and for updating and creating administrative directives, clinic, and health care guidelines. Dr. Meeks is also responsible for oversight of the independent contractor, Wexford, hired to provide healthcare personnel and treatment throughout the IDOC system. In all his actions described in this Complaint, Meeks is acting under color of state law and in the course of his employment.

8. Through discovery in this action, Plaintiff will identify currently-unnamed correctional officers at Stateville who violated his rights as described below.

9. Defendant Dr. Salwan is a physician at Stateville, employed by Wexford, who violated Plaintiff's rights, as described below.

10. Defendant Wexford receives billions of dollars from the State of Illinois to provide health care services to persons incarcerated in IDOC, and specifically at Stateville. Wexford employed Defendant Dr. Salwan at all times relevant to this Complaint.

## SUMMARY OF FACTS

11. Tyrus Scott became a paraplegic in 2002, after he was shot in the stomach and in the back; he is paralyzed from the chest down.

12. Scott requires a wheelchair to move.

13. Scott takes medication for his serious medical condition.

14. Scott entered the Illinois Department of Corrections ("IDOC") on November 9, 2018 and was sent to Stateville Correctional Center ("Stateville").

15. Upon his arrival, he was placed in general population in a cell that does not comply with the Americans with Disabilities Act ("ADA"). Upon information and belief, there are such cells in Stateville; nevertheless, IDOC is housing disabled prisoners in non-ADA compliant cells.

16. Scott's cell was one with bunk beds; Scott was placed in the lower bunk.

17. Scott's cell posed a grave danger to him, as he had to propel himself from his wheelchair into his bunk, placing his head and neck in danger of hitting the top bunk during these transfers.
18. Scott uses catheters to urinate.
19. Scott required up to 6 catheter tubes a day—a new one for each use—to prevent infection.
20. At Stateville, he was forced to use one catheter for up to two days at time.
21. In his cell, Scott lacked a biohazard box to dispose of his used catheter tubes and soiled diapers.
22. As a result, Scott's cell became littered with catheter tubes and soiled diapers.
23. Scott begged Defendants to provide him with a biohazard box, and his requests were outright ignored for approximately 11 days, while biohazardous waste accumulated in his cell.
24. On November 20, 2018, Scott was pleading for the attention of correctional Defendants to obtain a biohazard box; and, when no one addressed him, he bumped the arm of his wheelchair against a table in the cell, which produced a clank.
25. Unnamed correctional officer Defendants came into Scott's cell and sprayed him with mace.
26. Unnamed correctional officer Defendants took Scott to segregation.
27. Unnamed correctional officer Defendants removed Scott's pants.
28. In segregation, Scott was placed into the bed in his cell; and the unnamed correctional officer Defendants left the cell—and took his wheelchair with them.
29. They also took his pants: he lived in segregation for 9 days wearing a shirt and a diaper.
30. Scott was left in segregation, without his wheelchair, for approximately 9 days.
31. In order to obtain food and medicine, Scott had to lower himself out of his bed and drag his body across the cell to the door.
32. Realizing the risk of dropping out of his bed, and the difficulty of pulling himself back up onto the bed, Scott remained on the floor for much of his time in segregated housing.

33. The Defendants refused to provide Scott with pants while he was in segregated housing; therefore, Scott was forced to drag his bare legs across the concrete cell floor for approximately 9 days.

34. On multiple days, officers came to deliver Scott's medication while he was in bed; and Scott frantically tried to lower himself to the ground to drag himself to the door, while he begged and pleaded for the guards to wait for him. But the Defendants refused to wait, and Scott was deprived of his medicine entirely.

35. Prior to arriving at Stateville, Scott had a small pressure sore on his upper hamstring (Scott is prone to pressure sores because he is confined to a wheelchair).

36. While he was in segregation, Scott contracted a staph infection, likely from dragging his body across the dirty cell floor.

37. Furthermore, Scott was unable to wash his hands, as he could not reach the sink in his cell without his wheelchair.

38. On November 29, 2018, Scott was moved to a non-ADA complaint cell in the infirmary portion of Stateville.

39. Scott was finally given a replacement wheelchair but it lacked arm bars, foot stands, or any kind of cushion on the seat. As a result, he was almost completely unable to move. This lasted until May 1, 2019.

40. In that time, Scott fell out of that wheelchair multiple times.

41. On December 4, 2018, Dr. Salwan came into Scott's cell and told him that he was taking a culture of the staph infection.

42. Scott looked back to see a large hole in his buttocks and Dr. Salwan exiting the cell with a petri dish.

43. Dr. Salwan performed a surgical debridement (removal of dead tissue) of the open sore, without Scott's knowledge or consent.

## Count I: Violations of the Eighth Amendment's Prohibition Against Cruel and Unusual Punishment, Pursuant to § 1983 (All Defendants)

44. Plaintiff re-alleges paragraphs 1-43 as if fully stated here.

45. Officers committed cruel and unusual punishment when they maliciously and without any legitimate prison purpose:

    a. Made Scott be surrounded by his own urine and feces;

    b. Threw him in segregation for asking for help;

    c. Took his wheelchair (and did not replace it);

    d. Took his pants (and did not replace them) despite him having an open wound (which became a staph infection);

    e. Forced him to drag his bare legs across the floor to get to food and medicine;

    f. Intentionally humiliated him and denied him his medicine, while he dragged himself toward them;

46. Scott has an objectively serious medical condition as a paraplegic.

47. Defendants were aware that Scott has a serious medical condition that requires adequate, timely, and ongoing medical care.

48. Defendants were deliberately indifferent to Scott's serious medical needs, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment when they:

    a. placed him in non-ADA complaint cells with overhead bunks, which prevented him from being able to sit up and use his catheter properly, and resulted in him urinating on himself.

    b. refused to wait for Scott to drag his body to the cell door to obtain his medication (while he was in segregation without a wheelchair); therefore, leaving him without his medication for approximately four days when he was in segregated housing.

49. After Plaintiff was removed from segregated housing, Defendants were deliberately indifferent to Scott's serious medical needs when they gave him a wheelchair with no arms or footrests, creating the danger that Scott could fall out from his chair, or that he would cut or break his legs which were left to drag on the ground beneath him.

50. Defendants at Stateville knew their actions posed a significant risk to Scott's health and safety.

51. Due to the failures described herein, the Defendants have caused Scott to suffer and deprived Scott of his basic human dignity and decency.

52. Defendants' deliberate indifference to Scott's medical needs has deprived him of right to be free from cruel and unusual punishment.

WHEREFORE, Plaintiff requests that all Defendants be found liable, that judgment be entered against them and that the following remedies be ordered:

a. Injunctive relief from Baldwin and Meeks;

b. Compensatory damages against Dr. Salwan, Wexford and to-be-named officers;

c. Punitive damages against Dr. Salwan, Wexford, and to-be-named officers;

d. Attorney's fees; and

e. Costs.

### Count II: Denial of Reasonable Accommodations in Violation of the ADA (Against Defendant Baldwin, in his official capacity as Director of the IDOC)

53. Plaintiff re-alleges paragraphs (1-52) as if fully stated here.

54. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S. § 12132.

55. Defendant Baldwin is the Director of the IDOC, a public entity, as a department, agency, special purpose district, or other instrumentality of the State of Illinois, as defined in 42 U.S.C. § 12131(1).

56. Scott is a qualified individual with a disability, paraplegia, within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2).

57. Scott has a right not be discriminated against on the basis of his disability. 42 U.S.C. § 12132.

58. His physical impairments substantially limit one or more major life activities, including walking, standing, the functioning of his legs, the functioning of his urination and defecation, and caring for himself.

59. As such, Scott requires a wheelchair.

60. Scott was and is qualified for the program, services, and benefits available to disabled individuals in the IDOC, including but not limited to access to food, medicine, and a functioning wheelchair.

61. On November 20, 2018, Scott was denied reasonable accommodations when he was deprived of his wheelchair in segregated housing for approximately 11 days.

62. As a result, Scott was unable to access his medication, unable to move about his cell with dignity, and unable to use the facilities in his cell, such as the sink to wash his hands.

63. Scott was otherwise subjected to discrimination by Defendant Baldwin, when he was given a wheelchair with no arms or footrests, which prevented him from being able to safely move around the prison.

64. Scott was subjected to discrimination because of his disability.

65. As a proximate result of Defendant Baldwin's violations of his rights under the ADA, Scott suffered from discrimination, unequal treatment, exclusion from services, benefits, activities, programs, and requirements, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, trauma, embarrassment, and injury to his health.

66. Furthermore, Scott was deprived of necessary accommodations when he was deprived of his wheelchair.

67. Defendant Baldwin's refusal to accommodate Scott was intentional.

68. Due to the failures described herein, the Defendant Baldwin caused Plaintiff to suffer disability discrimination, in violation of the ADA.

69. As a direct and proximate cause of Defendant Baldwin's failure to comply with the ADA, Scott has suffered economic damages, in an amount to be determined by a jury.

WHEREFORE, Plaintiff requests that all Defendants be found liable, that judgment be entered against them and that the following remedies be ordered:

    a. Injunctive relief from Baldwin;

    b. Compensatory damages against Baldwin;

    c. Punitive damages against Baldwin;

    d. Attorney's fees; and

    e. Costs.

**Count III: Denial of Reasonable Accommodations in Violation of § 504 (Against Defendant Baldwin, in his official capacity as Director of the IDOC)**

70. Plaintiff re-alleges paragraphs (1-69) as if fully stated here.

71. The Rehabilitation Act states that no "qualified individual with a disability in the United States . . . shall, solely by reason of [] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

72. Defendant Baldwin is Director of the IDOC, which receives federal financial assistance within the meaning of 29 U.S.C. § 794(a).

73. Scott is a qualified individual with a disability, paraplegia, within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(2).

74. His physical impairments substantially limit one or more major life activities, including walking, standing, the functioning of his legs, the functioning of his urination and defecation, and caring for himself.

75. As such, Scott requires a wheelchair.

76. Scott was and is qualified for the program, services, and benefits available to disabled individuals in the IDOC, including but not limited to access to food, medicine, and a functioning wheelchair.

77. Scott has a right not to be subjected to discrimination on the basis of his disability. 29 U.S.C. § 794(a).

78. On November 20, 2018, Scott was denied reasonable accommodations when he was deprived of his wheelchair in segregated housing for approximately 11 days.

79. As a result, Scott was unable to access his medication, unable to move about his cell with dignity, and unable to use the facilities in his cell, such as the sink to wash his hands.

80. Scott was otherwise subjected to discrimination by Defendant Baldwin, when he was given a wheelchair with no arms or footrests, which prevented him from being able to safely move around the prison.

81. Scott was subjected to discrimination because of his disability.

82. As a proximate result of Defendant Baldwin's violations of his rights under the Rehabilitation Act, Scott suffered from discrimination, unequal treatment, exclusion from services, benefits, activities, programs, and requirements, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, trauma, embarrassment, and injury to his health.

83. Furthermore, Scott was deprived of necessary accommodations when he was deprived of his wheelchair.

84. Defendant Baldwin's refusal to accommodate Scott was intentional.

85. Due to the failures described herein, the Defendant Baldwin caused Plaintiff to suffer disability discrimination, in violation of § 504.

86. As a direct and proximate cause of Defendant Baldwin's failure to comply with the Rehabilitation Act, Scott has suffered economic damages, in an amount to be determined by a jury.

WHEREFORE, Plaintiff requests that all Defendants be found liable, that judgment be entered against them and that the following remedies be ordered:

a. Injunctive relief from Baldwin;
b. Compensatory damages against Baldwin;
c. Punitive damages against Baldwin;
d. Attorney's fees; and
e. Costs.

### Count 4: Battery Against Dr. Salwan and Wexford

87. Plaintiff re-alleges paragraphs (1-86) as if fully stated here.

88. Dr. Salwan performed a procedure on Scott with a total lack of consent and without any warning on December 4, 2018.
89. Scott did not grant consent to the procedure that Dr. Salwan performed.
90. The procedure that Dr. Salwan performed was against Scott's will.

WHEREFORE, Plaintiff requests that Dr. Salwan and Wexford be found liable, that judgment be entered against them and that the following remedies be ordered:

a. Injunctive relief from Dr. Salwan and Wexford;
b. Compensatory damages against Dr. Salwan and Wexford;
c. Punitive damages against Dr. Salwan and Wexford;
d. Attorney's fees; and
e. Costs.

## JURY DEMAND

Tyrus Scott, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury.

Respectfully submitted by:

/s/Katarina Savic
/s/ Julie Herrera
Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-697-0022
Fax: 312-697-0812
jherrera@julieherreralaw.com


DATED: 6/4/19